

_____
Honorable Bruce A. Markell
United States Bankruptcy Judge

**Entered on Docket**
**November 06, 2012**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * * *

In re:                   )    Case No.: BK-S-11-24415-BAM

PHILLIP JOSEPH OHLER,    )    Chapter 7

        Debtor.      )
_____)
ARTESIA GROUP, LLC,    )    Adversary Proceeding No.: 11-01376-BAM

        Plaintiff,   )
                  )    October 4, 2012
    vs.             )    (matter submitted on the briefs)

PHILLIP JOSEPH OHLER,    )

        Defendant.  )
_____)

OPINION DENYING ARTESIA GROUP, LLC'S NONDISCHARGEABILITY CLAIMS
UNDER 11 U.S.C. § 523(a)(2)[1]

    This adversary proceeding arises from a dispute between Artesia Group, LLC ("Artesia") and Phillip Joseph Ohler about whether Ohler fraudulently obtained a loan from Artesia for his fledgling business, American Wireless. When the loan, which Ohler had personally guaranteed, went into default, Artesia sued Ohler in state court on various claims for relief, including breach of contract and fraud. After Ohler answered the Complaint and only partially participated in

[1]Unless specified otherwise, all "Chapter" and "Section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532; and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, FED. R. BANKR. P. 1001–9037.

discovery, the state court struck his Answer as a sanction for failing to comply with discovery

orders.  The state court then ordered a default judgment (the "Default Judgment") in favor of

Artesia for approximately $155,000.

Ohler has since filed a Chapter 7 petition in this court.  Artesia followed with this adversary

proceeding, claiming that the loan debt, in particular Ohler's personal guaranty (the "Personal

Guaranty"), is nondischargeable under Sections 523(a)(2)(A) and (B) because the loan was

obtained by fraud.  Trial was set for September 14, 2012, but the parties agreed to submit the matter

on the briefs.  The parties also agreed that the sole legal issue is whether the Default Judgment has

preclusive effect for the issue of fraud.  Because the Default Judgment did not expressly find that

Ohler had committed fraud, this court holds that it is not preclusive on that issue.  As Artesia did

not submit any evidence to support an independent finding of fraud under Sections 523(a)(2)(A) or

(B), the court finds for Ohler.  His obligation under the Personal Guaranty is dischargeable.

I.  <u>BACKGROUND</u>

    A.  Factual History[2]

In January of 2007, Ohler formed American Data Centers, which later merged with another

company to become American Wireless Networks, Inc. ("American Wireless").  (Dkt. No. 22 at

3–4.)  The company's business was telecommunications networking and data storage.  (*Id.*)  In mid-

2007, Ohler met with Artesia to seek investment capital.  (*Id.* at 4; Dkt. No. 18 at 4.)  Artesia

declined to invest and instead made a short-term bridge loan for $200,000, which Ohler personally

guaranteed.  (Dkt. No. 18 at 4–5; Dkt. No. 22 at 4.)  To convince Artesia to make the loan, Ohler

presented projections about the financial future of American Wireless.  (Dkt. No. 18 at 4; Dkt. No.

22 at 4.)  Ohler argues that he made clear that the projections were not certain, while Artesia argues

---

[2]The following recitation is based on the parties' trial briefs and attached affidavits.  (Dkt. Nos. 18, 22.)  The court does not present this history as a finding of fact, but rather to provide context for the parties' assertions and the court's analysis.

2

that Ohler intentionally misrepresented American Wireless's business prospects.  (Dkt. No. 18 at 4–5; Dkt. No. 22 at 4–5.)

American Wireless defaulted on the loan in September of 2007, and Artesia then extended the maturity date to November 2007.  (Dkt. No. 18 at 5.)  American Wireless again failed to repay the loan by the maturity date in November, upon which Artesia negotiated a daily payment schedule.  (Dkt. No. 18 at 6.).  American Wireless failed to meet the payment schedule, and Artesia demanded full payment in March 2008.  (*Id.*)  American Wireless filed a Chapter 7 petition in this court in October 2008.[3]  Artesia later sued Ohler in Nevada state court when he failed to perform under the Personal Guaranty.  (*Id.*)

B.  Procedural History

1. *Nevada State Court Action*

On March 17, 2009, Artesia filed a Complaint in the Eighth Judicial District in Clark County, Nevada (the "State Court Action").[4]  (Dkt. No. 18-1, Ex. 1.)  Artesia plead five claims for relief: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) fraud in the inducement; (4) fraud; and (5) negligent misrepresentation.  (*Id.*)  For all five claims, Artesia sought attorneys' fees, costs, and at least $10,000 in damages.  (*Id.*)  For the two fraud claims, Artesia also sought punitive damages.  (*Id.*)  On May 18, 2009, Ohler filed his Answer, denying all of Artesia's claims.  (Dkt. No. 19-1, Ex. 2.)  In June 2009, counsel for both Artesia and Ohler appeared at the Early Case Conference, where they developed a discovery plan.  (*See* Dkt. No. 18-1, Ex. 3.)

Ohler's participation soon diminished and then ceased altogether.  He responded to Artesia's requests for admission but not to interrogatories or requests for document production.

---

[3] *In re Am. Wireless Networks* (Bankr. D. Nev. 2011) (No. 08-22980-LBR).

[4] *Artesia Group LLC v. Phillip Ohler* (Nev. 8th Jud. Dist. 2011) (No. 09A585449).

3

On March 23, 2010, Artesia filed a Motion to Compel Discovery.  (Dkt. No. 18-1, Ex. 6.)  On April 15, 2010, Ohler's counsel followed with a Motion to Withdraw, citing an inability to maintain consistent contact and communication with Ohler.  (Dkt. No. 18-1, Ex. 7.)  On April 23, 2010, neither Ohler nor his counsel appeared at the hearing on the Motion to Compel Discovery.  (*See* Dkt. No. 18-1, Ex. 8.)  The Discovery Commissioner recommended that the court grant the Motion to Compel, noting Ohler's complete failure to respond to and answer interrogatories and document requests, and extended the discovery deadline to May 7, 2010.  (*Id.*)  The state court adopted the recommendations on June 2, 2010.  (*See id.*)

On May 14, 2010, the state court extended the discovery deadline to June 30, 2010 and deferred any sanctions until then.  (Dkt. No. 18-1, Ex. 9.)  On May 18, 2010, the state court granted the Motion to Withdraw by Ohler's counsel.  (Dkt. No. 18-1, Ex. 10.)  After Ohler failed to meet the June 30 deadline, the state court signed the Order to Strike Answer on September 16, 2010.  (*See* Dkt. No. 18-2, Ex. 14.)  On March 31, 2011, the state court held a prove-up hearing on damages, at which Ohler failed to appear.  (*Id.*)  The state court entered default on June 16, 2011 for "failure to appear at the prove-up hearing . . . failing to answer or otherwise plead to Plaintiff's Complaint . . . ."  (Dkt. No. 18-2, Ex. 14.)

On June 30, 2011, Artesia filed its Application for Entry of Default Judgment.  (Dkt. No. 18-1, Ex. 13.)  Artesia demanded $155,346.85 for the sum of the outstanding principal balance due on the loan; default interest; attorneys' fees and costs incurred to date; attorneys' fees and costs to be incurred in enforcement of the default judgment; and post-judgment interest.  Notably, although part of the original prayer for relief, Artesia did not seek punitive damages.

On August 3, 2011, the state court granted default judgment.  The order states:

> IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Plaintiff's Motion for Default Judgment is GRANTED as it pertains to Defendant PHILLIP J. OHLER. Judgment is entered in favor of Plaintiff and against Phillip J. Ohler in the amount of: $155,346.85.  This sum is hereby reduced to judgment.  This sum

4

1  represents (1) $95,000.00 for the outstanding principal balance due on the loan; (2)
2  $36,500.00 for default interest; (3) $16,346.85 as and for the Plaintiff's attorneys'
   fees and costs incurred; (4) $7,500.00 for attorneys [sic] fees and costs to be
3  incurred in enforcement of the Judgment; and (5) for post-judgment interest, as
   provided by law.

4  (Dkt. No. 22, Ex. A (emphasis in original).)  Artesia's counsel drafted the order; the language

5  itemizing the judgment amount is identical to that in the Application for Entry of Default

6  Judgment.  (*See* Dkt. No. 18-1, Ex. 13.)

7          The judgment does not indicate which of the facts were essential to the state court's

8  determination.[5]  The state court did not expressly find that Ohler had committed fraud.  The nature

9  and amount of damages were common to all of Artesia's claims; punitive damages were not

10  requested or awarded.

11                   *2. The Bankruptcy Case and Related Adversary Proceeding*

12          On September 12, 2011, Ohler filed his Chapter 7 bankruptcy petition.  (Bankr. Dkt. No. 1.)

13  Three months later, on December 13, 2011, Artesia filed the Complaint in this adversary

14  proceeding.  (Dkt. No. 1.)  Artesia argues that Ohler's debt under the Personal Guaranty is

15  nondischargeable under Sections 523(a)(2)(A) and (B) on the same factual basis as the State Court

16  Action—that the loan was obtained by fraud.  (*Id.*)

17

18  ──────────────

19  [5]The minutes to the Prove-Up Hearing, which neither party attached to their briefs, indicate
    that the court viewed the default as based on breach of contract:

20          Court stated it had reviewed the Motion for Default Judgment and as to principal owed,
            accured [sic] interest, post judgment interest, and fees to collect, there are no issues and
21          the Court would be willing to grant additional fees.  Further, Court stated its only
            concern was with punitive damages and the Court would need explanation of how it
22          could justify awarding punitive damages in a contract case, otherwise Court is willing
            to grant default.
23  Mins., Prove Up Hr'g, Mar. 31, 2011, *Artesia Group LLC v. Phillip Ohler* (Nev. 8th Jud. Dist. 2011)
24  (No. 09A585449 ).  The minutes are not, however, an official communication by the state court and
    do not prove that the judgment solely relied on the breach of contract claim.  The relevant fact is that
25  the Default Judgment does not indicate which facts were necessary to the Judgment.

26                                                    5

Section 523(a)(2)(A) provides that a Chapter 7 discharge " does not discharge an individual debtor from any debt . . . to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]"   Section 523(a)(2)(B) covers the statements excluded under Section 523(a)(2)(A); a debt obtained by a materially false written statement respecting the debtor's or an insider's financial condition on which the creditor reasonably relied and the debtor intended to publish with intent to deceive is nondischargeable.   Artesia argues that Ohler's conduct fits both subsections.   (*Id.*)

On January 20, 2012, Ohler filed his Answer.   (Dkt. No. 7.)   He denied the allegations of fraud and alleged various procedural infirmites on Artesia's part.   (*Id.*)   Trial was set for September and the parties filed trial statements; the parties agreed that the only legal issue is whether the state court judgment should be given preclusive effect on the issue of fraud.   (Dkt. Nos. 13, 14.   *See* Dkt. No. 11.)   The parties then stipulated to submit the matter on briefs and declarations.[6]   (Dkt. No. 15.)

II.  DISCUSSION

A.  Issue Preclusion[7]

Issue preclusion is a doctrine that prevents the relitigation of issues that were decided in a prior proceeding, even if the later proceeding is based on different claims.   *Howard v. Sandoval* (*In re Sandoval*), 232 P.3d 422, 423 (Nev. 2010).   The principles of issue preclusion apply to nondischargeability proceedings brought under Section 523(a).   *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991).   Under 28 U.S.C. § 1738, the Full Faith and Credit Act, federal courts must apply

---

[6]The " Order to Vacate Trial and Submit Matter on Briefs and Declarations," states that the trial was vacated.  (Dkt. No. 16 at 2, ¶ 1.)  That is not correct.  Although the parties stipulated to " vacate" the trial, their intention was to try the matter on the briefs and declarations, not to cancel the trial altogether.  The court hereby vacates the portion of that order that purported to vacate the trial.  (*Id.*)

[7]Issue preclusion is the modern term for collateral estoppel.

6

the preclusion law of the state whose court issued the prior judgment. *Harmon v. Kobrin* (*In re*

*Harmon*), 250 F.3d 1240, 1245 (9th Cir. 2001) (citations omitted).  Under Nevada law, issue

preclusion has four elements:

> (1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; . . . (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated.

*In re Sandoval*, 232 P.3d 422 at 423.  Artesia and Ohler dispute only the first and fourth elements.

### 1. Identity of Issues

The Ninth Circuit has held that "a finding of debt due to fraud is all that is required to

satisfy § 523(a)(2)(A)." *Muegler v. Bening*, 413 F.3d 980, 983 (9th Cir. 2005) (citing *Cohen v. de la*

*Cruz*, 523 U.S. 213, 223 (1998)).  "It is only the fact of an adverse fraud judgment, and nothing

more, that is required for a debt to be nondischargeable." *Id.* at 984 (citation omitted).  There need

not be a perfect identity of elements. *See id.*  Thus, Ohler's argument that the issues are not

identical because Section 523(a)(2)(A) specifically excludes "statement[s] respecting the debtor's

or an insider's financial condition" and Section 523(a)(2)(B) requires such statements as an

essential element, fails.  Moreover, the elements of actual fraud under Nevada law and Section

523(a)(2)(A) are nearly identical. *See Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 446–47, 956 P.2d

1382, 1386 (1998); *Apte v. Japra* (*In re Apte*), 96 F.3d 1319, 1322 (9th Cir. 1996).  Excepting the

written statement requirement, and *reasonable* reliance instead of *justifiable* reliance, the required

elements under Section 523(a)(2)(B) are also nearly identical. *See* 11 U.S.C. § 523(a)(2)(B) (2011).

There is sufficient identity of issues to meet this element of issue preclusion.

### 2. Actually Litigated

The Nevada Supreme Court held, upon a question certified to it by this court, that "when a

default judgment is entered based on failure to answer, issue preclusion is not available because the

7

1   issues raised in the initial action were never actually litigated." *In re Sandoval*, 232 P.3d at 424.

2   Even if a defendant is properly served and/or actually aware of the allegations and simply chooses

3   not to litigate, issue preclusion does not apply. *See id.* The Court did not the reach the issue of

4   whether preclusion is available when a default judgment is based on abusive or dilatory litigation

5   tactics. *See id.* n. 1.

6       The Ninth Circuit, on the other hand, has reached this precise issue and held that issue

7   preclusion applies in such a circumstance. *Fed. Deposit Ins. Co. v. Daily* (*In re Daily*), 47 F.3d 365,

8   368–69 (9th Cir. 1995). " The 'actual litigation' requirement may be satisfied by *substantial*

9   *participation* in an adversary contest in which the party is afforded a reasonable opportunity to

10  defend himself on the merits but chooses not to do so." *Id.* at 368 (emphasis added). This court

11  predicts that the Nevada Supreme Court would follow the rule set forth in *In re Daily*. Under *In re*

12  *Daily*, the court finds that Ohler substantially participated in the State Court Action by filing an

13  Answer and participating in discovery; he did not simply give up from the outset. *See id.*

14  Therefore, the issue of fraud was actually litigated in the State Court Action. *See id.*

15              *3. Necessarily Decided*

16      The Ninth Circuit has addressed whether an issue has been " necessarily decided" and

17  found that the record must " show an express finding upon the allegation for which preclusion is

18  sought." *In re Harmon*, 250 F.3d at 1247 (citation and internal quotation marks omitted). Even

19  though a defendant admits all the facts that are well-pleaded in the complaint as true by failing to

20  answer, or where the answer is stricken, those factual admissions only have preclusive effect in a

21  later action to the extent that they were necessary to support the prior court's judgment. *See id.* It

22  is critical that they be necessary; although a group of facts found might be sufficient, if it cannot be

23  shown that they were necessary and essential to the judgment entered, this element of issue

24  preclusion is not met.

25

26                                  8

1    Whether Ohler committed fraud was not necessarily decided in the State Court Action

2    because the Default Judgment does not state upon which claims for relief it is grounded.

3    Moreover, the Default Judgment could be supported by facts in the Complaint that were

4    completely unconnected to the fraud claim.  Put another way, the Judgment could be sustained on

5    only the allegations related to the breach of contract claim without ever reaching the allegation

6    touching on fraud.  If the Default Judgment had included punitive damages, or some other way to

7    link the damages to an express finding of fraud, then issue preclusion might apply.  *See Cal-Micro,*

8    *Inc. et al. v. Cantrell* (*In re Cantrell*), 329 F.3d 1119, 1125 (9th Cir. 2003).

9    As a consequence, Artesia's claim of issue preclusion fails because, although the issue of

10   fraud was actually litigated, the state court did not expressly find that Ohler's debt was obtained by

11   fraud.  The only aspect of the Default Judgment that has preclusive effect is thus the dollar amount

12   because the judgment expressly states that amount: $155,346.85.  Ohler's debt in this amount

13   under the Personal Guaranty, however, is dischargeable because the state court did not necessarily

14   decide the issue of fraud.

15   B.  Sections 523(a)(2)(A) and (B)

16   There are insufficient facts to support an independent finding of fraud under Sections

17   523(a)(2)(A) or (B).  The only facts admitted for this trial, because they are they only ones that are

18   necessary for the judgment, are the claim amount.[8]  Artesia argues in its trial brief that Ohler's

19   behavior constitutes fraud.  But those factual assertions are merely argument, not facts admitted

20   into evidence.  The facts that Ohler admitted as true by operation of the stricken Answer do not

21   "carry over" as evidence in this court because, whether true or not, they were not necessary to the

22   Default Judgment.  They thus have no preclusive effect.

23

24        [8]By agreeing to try the matter on the briefs, Artesia waived the right to present any evidence

25   other than the Default Judgment.

26                                              9

III.  <u>CONCLUSION</u>

Because the issue of fraud was not necessarily decided in the State Court Action, it does not have preclusive effect on this court.  Nor did Artesia independently establish a finding of fraud under Sections 523(a)(2)(A) or (B).  Consequently, Artesia's nondischargeability claim fails.  The Default Judgment is preclusive for the claim amount, $155,346.85, but the debt that forms the basis of Artesia's claim—the Personal Guaranty—is dischargeable.

This opinion constitutes the court's findings of facts and conclusions of law under Rule 7052.  Judgment for the Defendant, Phillip Joseph Ohler, is entered under Rule 7058 in a separate document.

Copies sent to:
CM/ECF ELECTRONIC NOTICING
BNC MAILING MATRIX

# # #